[No. 3,589.]

## ROBERT SHEEHY, JOSEPH B. THOMAS, SIMON THOMPSON, AND NICHOLAS LUNING *v.* ELIJAH TRUE.

ACT OF CONGRESS, CALLED "SUSCOL ACT."—The Act of Congress, approved March 3d, 1863, granting the right of preëmption to bona fide purchasers from Vallejo of the Suscol Rancho, or portions thereof, gave to such purchasers the mere privilege of acquiring the title from the United States; and those who failed or refused to exercise that privilege lost all right to claim the benefit of the Act.

EQUITABLE DEFENSE IN EJECTMENT.—One who was a purchaser from Vallejo, and in possession of a portion of the "Suscol Rancho" prior to the rejection of Vallejo's claim to the same, and who refused to join with coterminous purchasers in an application to obtain a patent under said Act, and made no effort to avail himself of the privilege granted by said Act, cannot, in ejectment brought against him by such coterminous proprietors, who had obtained a patent for the land he had thus purchased as as equitable defense, convert the plaintiffs into trustees holding the legal title for his benefit, and compel them to convey to him.

APPEAL from the District Court of the Seventh Judicial District, County of Napa.

Ejectment to recover about sixty acres of land, being a portion of the southwest quarter of section thirty-six, township five north, range four west, Mount Diablo meridian. The defendant set up as an equitable defense that the demanded premises were a portion of the "Suscol Rancho," and that, at the date of the passage of the Act of Congress of March 3d, 1863, and at the time of the rejection of Vallejo's claim thereto by the Supreme Court of the United States, he was in the possession of the demanded premises, and had before then purchased the same from Vallejo, and that the plaintiffs had obtained a patent to the same from the United States, but that they could not lawfully purchase the same from the United States, not being purchasers from Vallejo, and that they had obtained their patent in fraud of the defendant's rights, and that the defendant, since the commencement of the suit, had tendered to plaintiffs the sum they had paid the United States for the land, and demanded a deed, which they had refused to receive, and had refused to give him a deed. There was a prayer that the plaintiffs be compelled to deed to defendant.

The answer did not aver that the defendant had made any application to buy the land under the Act, or that he was prevented from doing so by the plaintiffs. The plaintiffs demurred to the equitable defense set up in the answer, and the Court overruled the demurrer. On the trial it appeared that the defendant was a bona fide purchaser from Vallejo prior to said decision of the Supreme Court of the United States, and was in the possession of the premises at the time of said decision, and had since remained in possession; that the plaintiffs were the bona fide purchasers from Vallejo, and in possession of all of section thirty-six, except the demanded premises, and as the Act of Congress permitted coterminous proprietors, when their fences were not on the lines of legal subdivisions, to enter jointly, the plaintiffs applied to the defendant to join them in the entry of

section thirty-six, which he refused to do. It further appeared that the defendant did not make any application to buy the demanded premises from the United States, and that the plaintiffs applied to purchase the whole of section thirty-six after defendant's refusal to join them, and obtained a patent therefor.

The Court below first tried the equitable side of the action, and gave judgment for the defendant, and the plaintiffs appealed.

*Hartson & Burnell* and *Thomas P. Stoney,* for Appellants.

1. There is no allegation in the cross-complaint that defendant presented his claim to the Register and Receiver within the time prescribed by the Act of March 3d, 1863, Secs. 4 and 5. (*Burrell* v. *Haw,* 40 Cal. 377; *Dye* v. *Dye,* 11 id. 163; *Megerle* v. *Ashe,* 33 id. 74; *Damrel* v. *Meyer,* 40 id. 166.)

2. There was no allegation in the cross-complaint that defendant was prevented from presenting his claim by the fraud of the plaintiffs. (*Damrel* v. *Meyer,* 40 Cal. 166.)

3. It is not even alleged that the defendant at any time contemplated presenting a claim under the Suscol Act (March 3d, 1863), or would have done so but for the acts of plaintiffs. (*Quinn* v. *Kenyon,* 38 Cal. 504.)

4. There is no allegation of any relation of trust between the parties, nor of any breach of confidence, nor of any fraud, deception, or oppression practiced by plaintiffs upon defendant in the proceedings to procure the title to the land in controversy. (*Collins* v. *Bartlett,* 44 Cal. 371.)

5. It does not appear from the cross-complaint that defendant made his election to participate in the purchase and to pay his ratio of the consideration money within a reasonable time. (*Mandeville* v. *Solomon,* 39 Cal. 133.)

6. Defendant, being a mere stranger, could not profit by proof of the alleged fraud upon the United States. (*Burrell* v. *Haw,* 40 Cal. 373; *Collins* v. *Bartlett,* 44 Cal. 371.)

The mere fact that defendant was the purchaser from Vallejo of the premises in controversy cannot avail him in his attempt to establish a trust.

Under the Act of March 3d, 1863, purchasers from Vallejo were granted preëmption rights. A preëmptioner before payment has no right of property in the land. He has only a privilege to buy upon the terms and conditions presented by Congress. He is under no obligation to take the land; and failing to comply with the law, he forfeits the privilege. (*Hutton* v. *Frisbie*, 37 Cal. 476.)

We insist, then, that defendant should have alleged and proved that he complied with the terms of the Act of Congress by presenting his claim to the Register and Receiver within twelve months from the return of the survey to the Land Office; and in default of such allegation and proof, and still more upon proof that he never presented his claim at all, he must be regarded as having waived and lost his rights to the land, and his claim as barred and extinguished. (Sec. 5, Act March 3d, 1863; *Megerle* v. *Ashe*, 33 Cal. 74; *Estrada* v. *Murphy*, 19 Cal. 271; *Damrel* v. *Meyer*, 40 Cal. 169.)

*Steere & Spencer* and *A. P. Catlin*, for Respondent.

We invoke the power of a Court of equity to control the legal title, that it may be subservient to the equitable estate. In case a person purchases with notice of the legal or equitable title of other persons to the same property, he will not be permitted to protect himself against such claims; but his own title will be postponed to theirs, and in such cases Courts of equity will hold the purchaser a trustee for the benefit of persons whose rights he has sought to defeat. (Story's Eq. Juris., Vol. 1, Sec. 395.)

Lord HARDWICKE sums up the ground of the doctrine thus: "That the taking of a legal estate after notice of a prior right makes a person a *mala fide* purchaser, and not that he

is not a purchaser for a valuable consideration in every other respect. (Story's Eq. Juris., Sec. 397, et seq.)

The first question is, had defendant, True, such an interest in the property as would be sufficient to base a trust upon? We think so, for the reason that the law of 1863 (Suscol Act) defines and recognizes it.

Second—Was there an estoppel? There is no evidence or finding to support one.

Third—Does the issuance of the patent to plaintiffs preclude defendants? No. It was issued upon the application of plaintiffs, and defendant, True, was not a party to the record or proceedings. (*Salmon* v. *Symonds*, 30. Cal. 301; *Meader et al.* v. *Norton*, 11 Wallace 442.)

Fourth—Does the fact that defendant, True, did not apply nor intervene in order to obtain a patent, destroy the trust? No. (See *Wilson* v. *Castro*, 31 Cal. 420.)

By the COURT:

The equitable defense interposed by the defendant cannot be supported. The Act of Congress commonly called "the Suscol Act," afforded the defendant (as being a bona fide purchaser from General Vallejo, and in possession anterior to the rejection of the Vallejo claim,) a mere privilege of acquiring the title from the United States. This privilege, however, he rejected and utterly repudiated. He took no step whatever to acquire the title. Having under the terms of the Act the opportunity to unite with the plaintiffs in proceedings to acquire the title of the United States, he failed to do so, and being applied to by them to join as a coterminous proprietor in the application to the Federal Land Office to obtain the title, he refused to do so, and this was his attitude until after the patent for the entire tract had been passed to the plaintiffs, and so far as appears, until the latter commenced the present action to obtain the possession of the premises.

There is no principle of equity known to us which would enable the defendant under these circumstances to convert the plaintiffs into trustees of the legal title for his benefit, or divest them of that title in his favor.

Judgment reversed and cause remanded, with directions to dismiss the equitable defense and to try the issues at law.